1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  A.V. By and Through His Guardians Ad          Case No.:  3:16-cv-0803-CAB-(BLM)
    Litem ANDREA VAZ ANTUNES and
12  ANTONIO VAZ ANTUNES,                          **ORDER ON CROSS MOTIONS FOR**
                                                  **SUMMARY JUDGMENT**
13                                  Plaintiff,    **[Doc. Nos. 23, 24]**

14  v.

15  LEMON GROVE SCHOOL DISTRICT,

16                                  Defendant.

17

18          This matter comes before the Court on Plaintiff A.V.'s ("A.V.") Motion for

19  Summary Judgment [Doc. No. 23] and Defendant Lemon Grove School District's

20  ("District") Cross Motion for Summary Judgment [Doc. No 24].  The motions have been

21  fully briefed and the Court finds it suitable for determination on the papers submitted and

22  without oral arguments in accordance with Civil Local Rule 7.1(d)(1).  For the reasons set

23  forth below, the Court **DENIES** both motions and upholds the decision of the

24  Administrative Law Judge ("ALJ").

25
26
27
28

## I.   BACKGROUND

A.V. is a 12-year-old boy who resides within the District and suffers from dyslexia, auditory working memory, and visual processing deficits.  A.V. was first determined to be eligible for special education in December 2007.

In the beginning of 2014, Andrea Vaz Antunes ("Mother") and Antonio Vaz Antunes ("Father") (collectively "Parents") removed A.V. from the District school and placed him in Banyan Tree Foundations Academy ("Banyan") a non-public school. [Administrative Record ("A.R.") at 1216-17.[1]]  On March 3, 2014, Parents and District entered into a settlement agreement.  [*Id.* at 1008-19.]

The settlement agreement required District to reimburse Parents for tuition they had already paid at Banyan, as well as to set up an account for reimbursement expenses for tuition and transportation costs between the date of the settlement agreement and December 19, 2014.  [*Id.*]  Under the agreement District was required to conduct A.V.'s triennial assessment during the Fall of 2014 and convene a triennial Individual Educational Program[2] ("IEP") meeting between October 19, 2014, and December 19, 2014. [*Id.* at 1010.]

On December 15, 2014, an IEP team meeting was held which included Parents, A.V.'s advocate, Dr. Sara Frampton, and individuals from Banyan and District.  [*Id.* at 328-358.]  The meeting lasted two hours and some, but not all, of A.V.'s assessment results were discussed.  [*Id.* at 353-56]  Determining a placement for A.V. was a topic of discussion but no decision was reached and no offer was made. [*Id.* at 2329.]  Dr. Frampton

---

[1] On September 15, 2016, Plaintiff lodged four compact discs with the Court which included the entire administrative record and three audio recording of the Individual Education Program meetings.  [Doc. No. 20.]  All page references are to pages 1-2390 of the Administrative Record, the number which is located in the top right hand corner of the document.

[2] An IEP is defined as a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d) of this title."  20 U.S.C. § 1401(14).  It is a "comprehensive statement of the educational needs of a handicapped child and the specially designated instruction and related services to be employed to meet those needs."  *Sch. Comm. of the Town of Burlington v. Mass. Dep't of Educ.*, 471 U.S. 359, 368 (1985).

requested District continue to fund A.V.'s education at Banyan past December 19, 2014, District's legal counsel responded that the request would be discussed with Parents' counsel. [*Id*. at 353.] District did not identify a District school where A.V. should enroll while his IEP was being developed[3]. The meeting adjourned with all team members agreeing to reconvene as soon as possible in order to complete the IEP. [*Id*. at 355, 1315.]

In an email exchange subsequent to the December IEP meeting, Dr. Frampton and District's legal counsel discussed possible non-public school options for A.V., including NewBridge. [*Id*. at 958-59.] On December 20, 2014, District's legal counsel informed A.V.'s representatives that District was taking the position was that it had not caused any delay in convening the triennial IEP mandated by the settlement agreement and stated that District would not continue the funding of Banyan. [*Id*. at 964.] The communication did not identify which District school or classroom A.V. should report to and no offer of an alternative placement pending development of A.V.s new IEP was provided. [*Id*.] The email continued "Lemon Grove is open to considering all placement options at the upcoming IEP team meeting, including Banyan Tree." [*Id.*] On December 30, 2014, A.V.'s legal counsel requested that District, given the lack an offer of a free appropriate public education ("FAPE") from District, continue to fund Banyan. [*Id*. at 360-61.] District did not respond to this request.

On January 21, 2015, Parents' counsel were provided with a draft of A.V.'s goals that were to be discussed at the upcoming IEP team meeting. [*Id*. at 1035-51.] The email stated that Dr. Burkett had been unsuccessful in her attempts to contact Steve Mayo, Director of NewBridge, to discuss whether NewBridge would be an appropriate placement option for the team to discuss at the upcoming meeting. [*Id*. at 1035; *see also* 1543-44, 1605-06.]

---

[3] The District's Director of Special Education, Dr. Bobbi Burkett, testified at the OAH that there was no stay put placement for A.V. as of the time of this meeting. [A.R. at 1803.]

On January 23, 2015, IEP team meeting was reconvened.  [*Id.* at 363-64.]  The IEP team reviewed the results of all District assessments and Banyan progress reports.  [*Id; see also* 1749-55.]  Modifications were made to A.V.'s eligibility categories and proposed goals for A.V. were agreed upon.  [*Id.*]  The team agreed that neither a general education classroom nor a special day classroom at a District school would meet A.V.'s needs.  [*Id.* at 364.]  District offered A.V. placement at a non-public school but did not believe that Banyan was an appropriate facility[4].  [*Id.* at 1756-57, 1826, 2148-49.]  Dr. Frampton and Parents wanted A.V. to remain at Banyan to the end of the 2014-2015 school year but suggested NewBridge as an option for a non-public school.  [*Id.* at 364, 2252.]  District's representatives would not agree to A.V. remaining at Banyan but did not propose an alternative school.  [*Id.* at 364, 1766.]  Dr. Burkett informed Parents that District would investigate other possible non-public placements and propose an alternative school.  [*Id.* at 2253.]

Following the initial IEP team meeting in December 2014, District and Parents engaged in settlement discussions which ended in April 2015 with no agreement having been reached.  [Supplemental Record ("S.R.") at 4-90.[5]]  In the wake of the breakdown of the settlement discussions Dr. Burkett began investigating possible non-public school placements for A.V.  [A.R. at 1763-64.]  Sierra was identified as a potential option for A.V. that had an immediate opening.  [*Id.* at 1764-65, 1772.]  During this period, A.V. remained at Banyan, with Banyan temporarily waiving tuition charges for him.   [A.R. at 1900, 1903-04.]

---

[4] The District, based upon the results of their assessments, were concerned with A.V.'s lack of academic progress at Banyan and that A.V.'s need for peer interaction would not be met due to Banyan's educational model.  [A.R. at 2148-49.]

[5] On September 16, 2016, the parties filed a joint motion to supplement administrative record [Doc. No. 21] which was granted by the Court [Doc. No. 22].  Exhibits 1-15 attached to the parties' joint motion [Doc. No. 21-2] were admitted as supplementary evidence.  Page references to the Supplement Record refer to those assigned in the CM/ECF to Doc. No. 21-2.

On April 24, 2015, Parents on behalf of A.V. filed a due process hearing request with the Office of Administrative Hearings ("OAH") ("the OAH Complaint").  [*Id.* at 1-8.]  The OAH complaint was amended on May 13, 2015, to include District's offer to place A.V. at Sierra Academy.  [*Id.* at 13-24, 36.]

On April 26, 2015, District's legal counsel wrote to A.V.'s legal counsel offering A.V. immediate placement at Sierra once Parents consented to the offer of placement.  [*Id.* at 367-69.]  In the letter, District agreed to reimburse Parents for tuition at Banyan subject to proof and documentation of attendance.  [*Id.; see also* 1785-86.]  A copy of the IEP document developed at the December 15, 2014, and January 23, 2015, IEP meetings was enclosed.  [*Id.* at 370-404.]

On May 6, 2015, District's counsel wrote to A.V.'s legal counsel asking for any revisions A.V. or his representatives were proposing regarding his IEP.  [*Id.* at 405-06, 978.]  District reiterated its offer of placement at Sierra and offered to facilitate Parents' tour of Sierra.  [*Id.* at 405, 978, 1780-81.]  May 20, 2015, was proposed as the next IEP team meeting date.  [*Id.* at 405, 407, 978-79.]  Before the May IEP team meeting, Parents toured Sierra without involving the District.[6]  [*Id.* at 1034, 1275.]

On May 20, 2015 an IEP team meeting was convened.  [*Id.* at 411-38.]  A.V.'s Parents, legal representatives for both parties, Dr. Frampton, and numerous District employees were present.  [*Id.* at 411.]  No representative from Sierra attended the meeting.[7]  [*Id.* at 1515-16.]  Numerous issues of concern to Parents were discussed and the IEP was

---

[6] A.V.'s mother did not believe that Sierra would be a good fit for her son.  [A.R. at 1406-07, 1426-32.]  Nevertheless, at the OAH, A.V. stipulated that he was not contesting whether Sierra was appropriate, could meet his needs, or constituted a FAPE.  [*Id.* at 1056-59 at 1058:25-1059:2.]  Sierra was a certified non-pubic school serving children with a variety of disabilities, including dyslexia.  It has reading specialists on staff who could provide reading intervention programs to A.V., and had professionals who could provide the related services he needed.

[7] Dr. Burkett testified that having a representative of a non-public school in attendance at an IEP meeting prior to agreement would be considered a predetermination of placement.  [A.R. at 1767, 1797.]  Ms. Eagling, Director of Sierra Academy, testified that it was Sierra's practice not to send representatives to IEP team meetings unless students are enrolled and/or accepted at its school.  [*Id.* at 1515-16.]

modified and revised in the two hour meeting.  [*Id.* at 411.]  District made an offer of placement and services to A.V. that included: placement at a non-public school, with round-trip transportation; speech and language therapy twice a week, for 25 minutes a session; occupational therapy services 30 minutes a week; and social work services of 1,200 minutes a year.  [*Id.*]  The District reiterated that it was offering placement at Sierra, which had an immediate opening and was closer to his home and had a reading teacher and reading interventions.  [*Id.* at 411, 1795-97.]  NewBridge did not have an opening for A.V. and was further away than Sierra.  [*Id; see also* 1544, 1795-96.]  Dr. Frampton requested District fund Banyan for the remaining three weeks of the school year, and stated that NewBridge would serve A.V. well and had an opening starting at the beginning of the extended school year.  [*Id*.]  District agreed to respond to these requests by the end of the school year.  [*Id.*]

On May 26, 2015, District responded to Plaintiff's OAH complaint.  [*Id.* at 986-92.] In its' response District extended its April 26, 2015, non-confidential settlement offer to the end of the school year and agreed to reimburse Parents for Banyan tuition and mileage reimbursement dating back to January of 2015 to the end of the 2014-2015 school year. [*Id.* at 991, 1786-87.]  District continued to offer Sierra as FAPE.  [*Id.* at 991.]

On June 5, 2015, Parents declined District's May 28, 2015, Statutory Settlement Offer claiming that the terms of the offer were overly broad and lacked specificity.  [*Id.* at 601-602, S.R. at 123-24.]  On June 20, 2015, Parents' counsel served notice on District of Parents' intent to change A.V.'s placement from Banyan to NewBridge for the 2014-2015 extended school year.  [A.R. at 994.]

On June 24, 2015, Parents' counsel contacted District with a proposed resolution of the OAH matter, sought reimbursement for Banyan and mileage expenses, requested reimbursement for extended school year at NewBridge, placement at NewBridge for the 2015-2016 school year, and student's stay-put placement at NewBridge pending an IEP meeting at the beginning of the school year, an attorney fees and costs in the amount of $6,000.00.  [*Id.* at 603-04.]

On July 1, 2015, Parents enrolled A.V. at NewBridge, for the extended school year at a cost of $2,250.  [*Id.* at 1525, 1551.]  Parents were billed $1,825 a month for tuition for the regular school year, which did not include charges for related services.  [*Id*. at 1550.]

On August 28, 2015, District responded to the notice of placement reiterating that District had decided against funding A.V.'s placement at NewBridge and that Sierra could provide A.V. with a FAPE in the least restrictive environment.  [*Id.* at 996-98.]  District stated that it had investigated Dr. Frampton's concerns regarding Sierra and concluded, that contrary to her assertions, Sierra does not serve children with significant social and emotional issues and disagreed with her assertion that NewBridge was better than Sierra. [*Id.* at 996-97.]  District specifically referenced "Dr. Frampton's comment made at the May 20th IEP that NewBridge is the 'perfect fit' for [A.V.]."  [*Id.* at 997.]  On the same day District filed a complaint with the OAH to determine whether its offer of Sierra Academy constituted a FAPE.  [*Id.* at 67-74.]

On September 2, 2015, the OAH consolidated A.V. and District's cases.  [*Id.* at 88-90.]   In October and November of 2015 a six day OAH hearing was held before Administrative Law Judge Darrell Lepkowsky.  On January 8, 2016, the ALJ issued a Decision.[8]  [*Id.* at 1060-108.]   The ALJ found that A.V. was denied a FAPE between

---

[8] There were eight identified issues before the ALJ:  (1) Did the District deny A.V. a FAPE by failing to make an appropriate, specific offer of placement on or after December 2014?; (2) Did District deny A.V. a FAPE with regard to the January 23, 2015 IEP team meeting by: (a) failing to offer a specific non-public school placement; and (b) failing timely to provide A.V. with a copy of the January 23, 2015 IEP document and meeting notes?; (3) Did the District's April 25, 2015 offer of placement at Sierra deny A.V. a FAPE, because: (a) District predetermined its offer of placement at Sierra; (b) District made the offer through correspondence between its attorney and A.V.'s attorney instead of at an IEP meeting; and, (c) District failed to convene an IEP team meeting to discuss A.V.'s placement subsequent to making the offer of placement?; (4) Did District deny A.V. a FAPE at the May 20, 2015 IEP meeting, by: (a) Failing to have a non-public school representative from Sierra present; and, (b) denying A.V's parents the opportunity to meaningfully participate in the meeting?; (5) Did District deny A.V. a FAPE by failing to conduct a vision therapy assessment at any time after the December 15, 2014 IEP meeting?; (6) Did District deny Student a FAPE from December 15, 2014, to the [date of the OAH hearing], by failing to make an appropriate and/or sufficient offer of occupational therapy, speech and language therapy, or vision therapy services?; (7) Did District offer A.V. a FAPE in the least restrictive environment in the triennial IEP dated December 15, 2014, as amended in January 23, 2015, and May 20, 2015?; (8) Does the settlement agreement between

December 20, 2014 and April 26, 2015, because District failed to make an appropriate, specific offer of placement between December 20, 2014, and April 26, 2015. [*Id.* at 1089-92.] Further, the ALJ concluded that the District did not predetermine its offer of placement at Sierra and was not required to make the offer at an IEP team meeting. [*Id.* at 1093-95.] Additionally, the ALJ held that the failure to have a representative from Sierra at the May 20, 2015, IEP team meeting was not a FAPE violation and that Parents had meaningfully participated in the meeting. [*Id.* at 1095-97.] Furthermore, the ALJ found that the settlement discussions did not limit A.V.'s remedies, and held that A.V.'s Parents were entitled to reimbursement for A.V.'s tuition at Banyan from January 5, 2015, to June 10, 2015, totaling $27,030, and for mileage costs for transporting A.V. to Banyan in the amount of $1,604.67.[9] [*Id*. at 1102-06.]

On April 4, 2016, A.V., by and through his Parents as guardians ad litem, filed a complaint for partial reversal of the decision of the Office of Administrative Hearings ("OAH") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. [Doc. No. 1]. On June 22, 2016, District filed a cross-complaint seeking partial reversal of the decision rendered by the OAH. [Doc. No. 14.]

In his complaint Plaintiff alleges that the ALJ erred in holding that Defendant's April 25, 2015, offer of placement at Sierra was not a predetermination (Issue 3(a)). [Doc. No 1 ¶ 21.] Further, Plaintiff alleges that the ALJ was incorrect in ruling that the failure to have a non-public school representative at the May 20, 2015, IEP meeting was not a denial of FAPE (Issue 4(a)). [*Id.* ¶ 22.] Relatedly, Plaintiff also claims that the ALJ incorrectly ruled that Parents were not denied a meaningful opportunity to participate in the May 20, 2015, IEP meeting (Issue 4(b)). [*Id*.] Plaintiff also seeks reimbursement of reasonable

---

the parties, executed on February 28, 2014, and March 3, 2014, limit or otherwise preclude any remedy to which A.V. might otherwise be entitled for prevailing on any issue brought in this case? [A.R. at 1061-62.]

[9] Specifically, the ALJ found that A.V. prevailed on a portion of Issue 1; on Issue 2(a); on a portion of issue 7; and on Issue 8 [A.R. at 1106.]

attorneys' fees as the prevailing party in the OAH proceeding, as well as attorneys' fees incurred as a result of filing this action.  [*Id.* ¶ 24.]

Defendant's cross complaint includes multiple challenges to the ALJ's findings. First, Defendant contends that the OAH erred when it ruled that Plaintiff was denied a FAPE.  (Issues 1, 2a, 7).  [Doc. No. 14 ¶ 22.]  Second, Defendant asserts that the ALJ erred in allowing Plaintiff an award of remedies and by deciding that Parents were entitled to tuition reimbursement for A.V.'s time at Banyan after December 20, 2014 (Issue 8).  [*Id.* ¶¶ 25, 26, 28.]  Relatedly, Defendant argues that the ALJ did not give due weight to the ongoing settlement discussions between the Parties or the offers made by the District, or fully consider the District's efforts to resolve Plaintiff's placement (Issue 8). [*Id.* ¶¶ 23, 24.]  Fourth, Defendant argues that Plaintiff should be not be accorded prevailing party status.  [*Id.* ¶ 30.]

On November 4, 2016, the parties filed cross motions for summary judgment.  [Doc. Nos. 23, 24.]

## II.   LEGAL STANDARD

The Individuals with Disabilities Education Act ("IDEA") ensures that "all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(1)(A).  The Act requires state and local education agencies to identify children with disabilities and develop annual individualized educational programs ["IEPs"] for every child.  *Id.* § 1414.  Further, the IDEA obligates schools and education agencies to fully involve parents in the formulation, review, and revision of their child's IEP.  *Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 208 (1982) ("Congress sought to protect individual children by providing for parental involvement in the development of state plans and polices, [], and in the formulation of the child's individual educational program.")

The IDEA provides that in actions challenging an administrative decision "the court shall review the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The district court reviews the administrative decision under a modified *de novo* standard. *Ojai Unified Sch. Dist. v. Jackson*. 4 F.3d 1467, 1471-73 (9th Cir. 1993). But courts are cautioned not to view the provision as "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987) (citations omitted); *Ojai*, 4 F.3d at 1472.

Rather, the reviewing court shall give due weight to the administrative proceedings and consider its' findings carefully. *See Rowley*, 458 U.S. at 206; *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 481 F.3d 770, 775 (9th Cir. 2007); *Ojai* 4 F.3d at 1474. Particular deference is to be given when the hearing officer's administrative findings are thorough and careful or based on the credibility of live witnesses. *See Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994); *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 889 (9th Cir. 2001). However, "[h]ow *much* deference to give state educational agencies, [], is a matter for the discretion of the courts." *Gregory K.,* 811 F.2d at 1311 (emphasis in original).

In analyzing whether a FAPE was available to a student under the IDEA, the court must determine if the State has complied with the procedures set forth in the Act and if the IEP is "reasonably calculated to enable the child to receive educational benefits. *Rowley*, 458 U.S. at 206-207. *See also K.D. ex rel. C.L. v. Dept. of Educ., Haw.*, 665 F.3d 1110, 1114 (9th Cir. 2011) (citing *Amanda J.,* 267 F.3d at 881) ("A state must comply both procedurally and substantively with the IDEA."). "However, procedural violations may be harmless "if they do not 'result[] in a loss of educational opportunity or significantly restrict

parental participation." *K.D*, 665 F.3d at 1122-23 (quoting *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009)).[10]

The party seeking relief bears the burden of demonstrating that the ALJ's decision should be reversed. *J.W. v. Fresno Unified Sch. Dist.*, 626 F. 3d 431, 438 (9th Cir. 2010).

## III.   DISCUSSION

In his motion, Plaintiff argues that District's April 23, 2015, offer of placement at Sierra was improper because it was a predetermination. [Doc. No. 23 at 17-25.[11]] Further, Plaintiff asserts that the ALJ was incorrect in ruling that the failure to have a non-public school representative at the May 20, 2015, IEP meeting was not a denial of FAPE. [*Id*. at 24-29.]   In its' papers, District assert that it offered A.V. a free appropriate public education. [Doc. No. 24-1 at 19-24.]  Further, District contends that the ALJ's award of reimbursement was in error. [*Id*. at 25-31.]

As explained in more detail below, the preponderance of the evidence supports the ALJ's decision that: (a) there was no predetermination; (b) there was no denial of FAPE because of a procedural violation; (c) A.V. was denied a FAPE between December 20, 2014 and April 26, 2015; and (d) reimbursement was proper.  The Court defers to the ALJ's fact and policy findings because she presided over a lengthy hearing, reviewed hundreds of pages of documents, and provided a thorough and careful analysis of the issues. *Union Sch. Dist.*, 15 F.3d at 1524.

### A. ALJ Correctly Decided that School District's Offer of Placement at Sierra Was Not a Predetermination in Violation of IDEA

One of Plaintiff's procedural contentions is that placement at Sierra Academy was improper because it was a predetermination, in violation of the IDEA.  First, Plaintiff

---

[10] *See also M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 852 (9th Cir. 2014) (quoting *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008)) ("[I]f the court finds procedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, or that caused a deprivation of educational benefits" the court would not need to reach the substantive question of compliance with the IDEA.)

[11] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

argues that the offer of Sierra was independently developed without parent participation. [Doc. No. 23 at 18-20.]  Second, Plaintiff asserts that the District's offer of Sierra was a "take it or leave it offer" thereby denying Parents and the IEP team an opportunity to be involved in the placement decision.  [*Id.* at 20-21.]  Finally, Plaintiff argues that the ALJ was incorrect in ruling that "District had not predetermined the offer of Sierra because it 'was not required to identify a specific non-public school in Student's IEP."  [*Id.* at 21:7-9.]  In opposition, District argues that the offer of Sierra was not the selection of A.V's "educational placement option," it was simple a location decision.  [Doc. No. 26 at 13.]  Further, District asserts that the educational placement decision was made at the January 23, 2015, IEP team meeting with full participation from A.V.'s Parents.  [*Id.*]

Predetermination is a procedural violation that deprives a student of a FAPE in those instances where placement is determined without parental involvement in developing the IEP.  *Ka.D. ex rel. Ky.D. v. Solana Beach Sch. Dist.*, No. 08-CV-622 W, 2010 WL 2925569, at *4, (S.D. Cal. July 23, 2010)  aff'd sub nom. *Ka.D. ex rel. Ky.D. v. Nest*, 475 Fed.Appx. 658 (9th Cir 2012) (citing *Deal v. Hamilton Cnty. Bd. of Educ.,* 392 F.3d 840, 857 (6th Cir.2004)).  *See also, e.g., K.D.*, 665 F.3d 1124 ("A school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement.") (citing *W.G. v. Bd. of Tr. of Target Range Sch. Dist. No. 23,* 960 F.2d 1479, 1484 (9th Cir.1992), superseded by statute on other grounds, as recognized in *R.B. v. Napa Valley Unified Sch. Dist.,* 496 F.3d 932 (9th Cir.2007)); *Z.F. Ripon Unified Sch. Dist.,* No. 2:11-CV-02741-KJM-GCH, 2013 WL 127662, at *6 (E.D. Cal, Jan. 9, 2013) ("Predetermination occurs when an educational agency has made a determination prior to the IEP meeting, including when it presents one educational placement option at the meeting and is unwilling to consider other alternatives.") (citation omitted).

IDEA requires that the placement be based on the IEP, and not vice versa. *Spielberg v. Henrico Cnty. Pub. Schs.*, 853 F.2d 256, 259 (4th Cir. 1988).  But while "IDEA guarantees a free appropriate education, it does not, however, provide that this education

will be designed according to the parent's desires." *Shaw v. Dist. of Columbia*, 238 F. Supp. 2d 127, 139 (D.D.C. 2002).  An IDEA procedural violation is redressable only when it denies parents meaningful participation in the IEP process or causes a deprivation of educational benefits. *J.L. v. Mercer*, 592 F.3d 938, 953 (9th Cir. 2009).

In its decision, the ALJ directly addressed Plaintiff's predetermination argument and found that A.V. had not demonstrated that District predetermined his placement at Sierra. [A.R. at 1093-95.]  The ALJ concluded that:

> District here considered Student's request for placement at NewBridge. However, that school was initially unavailable and could not be offered. District later determined that Sierra would meet Student's needs, a fact to which Student has stipulated.  District was not required to offer Parents' preferred placement.  District engaged in a thorough discussion of Student's placement needs with Parents and their representatives at the January 23, 2015 IEP team meeting.  There is no evidence that Parents' participation in that discussion was hindered in any way.  The decision to offer a non-public school was mutually arrived at by all IEP team members.  There is no evidence that District predetermined Student's placement.

[*Id.* at 1094 ¶ 33.]

Neither party disputes the ALJ's conclusion that Parents had participated in the discussions regarding A.V.'s placement in a non-public school.

The Court finds that the administrative record supports the ALJ's conclusion that District did not predetermine its offer of placement at Sierra.  Two IEP meetings were convened in December 2014 and January 2015 to discuss A.V.'s placement options.  [*Id.* at 328-58, 363-64, 1752-57, 1826, 2148-49.]  At the second IEP meeting on January 23, 2015 the team agreed that neither a general education classroom nor a special day classroom at a District school would meet A.V.'s needs.  [*Id.* at 363-64, 1756-57, 1826.] The team also agreed on A.V's areas of need, changed A.V's eligibility category and agreed that A.V. required small group instruction in a structured setting, with a low student to teacher ratio, in a setting that provided no distractions, with intensive reading support to address A.V.'s dyslexia, to make progress.  [*Id.* at 362-64.]  However, when the meeting

13

dispersed it was unclear where the exact location of the proposed program would be. [*Id.*] The record shows that Parents and Dr. Frampton were proposing NewBridge but were not in favor of Sierra, and that District had ruled out Banyan as an option. [*Id.* at 364.] Consistent with District's policy following the offer of a non-public school, Dr. Burkett informed Parents that the District would investigate possible non-public placements and propose an alternative school. [*Id.* at 2253.]

Beginning in April, 2015, the District made its offer of placement at Sierra. [*Id.* at 367-68.] At the May 20, 2015, IEP team meeting changes were made to the IEP document to reflect the learning disability designations the team had agreed to in January 2015 and to A.V.'s goals. [*Id.* at 411-38.] District's offer of placement and services was updated to reflecting the changes requested by Parents and A.V.'s advocate. [*Id.*] NewBridge and Sierra were discussed as possible placement options for A.V. with District explaining that it was offering placement at Sierra because, unlike NewBridge, it was closer to A.V.'s home, and had an immediate opening. [*Id.* at 411, 1795-97]. Sierra was also offered because it has staff who could help with A.V.'s reading difficulties and meet his needs. [*Id.* at 411, 1796.]

The Court does not agree with Plaintiff's assertion that District's failure to offer to hold an IEP meeting to discuss Sierra after offering it as a placement is evidence of predetermination. While District did not propose an IEP team meeting in the April 26, 2015, letter offering Sierra as a placement, it did promptly scheduled an IEP meeting after receiving A.V.'s representatives' request to hold an IEP meeting to discuss the offer. [*Id.* at 367, 405, 1780-81.] The IEP team meeting was subsequently held on May 20, 2015, and A.V.'s possible placement at NewBridge and Sierra was discussed by the team. [*Id.* at 411-38, 1795-96.] The Court declines to read predetermination into District's behavior finding, as the ALJ did, that "it is disingenuous to argue that District failed to convene a meeting when Student immediately requested one himself, and District immediately moved to make sure that the meeting took place in a timely fashion at a date and time mutually agreeable to all parties." [*Id.* at 1095 ¶ 37.]

Neither does the Court agree with Plaintiff's assertion that District was unwilling to consider alternative placements for A.V.[12]  The administrative record shows that as early as January 2015, Dr. Burkett had investigated whether NewBridge would be an appropriate placement option for A.V., and that NewBridge was discussed as an option at both the January and May 2015 meetings.  [A.R. at 363-64, 411, 1035, 1605-06, 1795-96.] Moreover, Plaintiff is incorrect when he asserts that "District admitted they were unwilling to consider any alternative placement for A.V. besides Sierra."  [Doc. No. 23 at 20:20-21.] Dr. Burkett did not testify that the District was unwilling to consider alternative placements.  When asked by Ms. Minelli whether, after sending the April 16, 2016 letter "aside from NewBridge and Sierra was the District willing to consider any other non-public school placements as an option?" Dr. Burkett responded "at that point in time, no, we weren't considering any other options."  [A.R. at 1822:11-15.]  The Court interprets this testimony to mean that District was considering NewBridge and Sierra and not as evidence that Sierra was the only option being considered.  Similarly, the discussion at the May 20, 2015 IEP team meeting about the physical location for A.V.'s placement and District's agreement to investigate Dr. Frampton's concerns regarding Sierra and her view that NewBridge would be the 'perfect fit for A.V" are illustrative of District's willingness to consider options other than Sierra.  [*Id.* at 411, 997.]

(i)     *The ALJ Correctly Ruled That District Was Not Required to Identify a Specific Non-Public School*

The parties dispute whether the ALJ was correct in ruling that District was not required to identify a specific non-public school in Student's IEP.  Plaintiff posits that the ALJ's finding goes against black letter law and contends that the District is required to offer a specific single program for student and must specify the program when it offers a

---

[12] Beginning in April 2015, Dr. Burkett began contacting other non-public schools, not just Sierra and NewBridge to ascertain whether they would meet A.V.'s needs.  [A.R. at 1806-08, 1810-11.]

non-public school.  [Doc. No. 23 at 21-25.]  District counters that school districts can unilaterally identify the school that will implement a student's IEP.  [Doc. No. 26 at 15-18.]

The Ninth Circuit has held that the formal written notice requirement of IDEA should be enforced rigorously because it creates a clear record and "a formal, specific offer from a school district will greatly assist parents in 'presenting complaints with respects to any matter relating to the . . . educational placement of the child.'"  *Union,* 15 F.3d at 1526 (quoting 20 U.S.C. § 1415(b)) (finding that district cannot escape its obligation to formally offer educational placement by arguing that a disabled child's parents expressed unwillingness to accept that placement).

"However, choosing which school the student will attend is an administrative decision."  *Deer Valley Unified Sch. Dist. v. L.P. ex rel. Schripsema*, 942 F. Supp. 2d 880, 887 (D. Ariz. 2013) (collecting cases).  Educational placement under the IDEA refers to the general educational program in which a student is enrolled rather than the specific school assigned.  *See A.M. v. Dist. of Columbia,* 933 F. Supp. 2d 193, 199 (D.D.C. 2013) ("plaintiffs tend to blur the distinctions between the development of an IEP, the determination of an educational 'placement' under the IDEA, and the selection of a particular school location for the implementation of that program.") (collecting cases); *A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.,* 372 F.3d 674, 682 (4th Cir. 2004) ("educational placement is not the location to which the student is assigned but rather the environment in which educational services are provided"); *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 419 (2nd Cir. 2009) ("'Educational placement' refers to the general educational program – such as the classes, individualized attention and additional services a child will receive – rather that the 'bricks and mortar' of the specific school.").  The IDEA does not require that the IEP name a specific school location.  *Deer Valley,* 942 F. Supp. 2d at 887 (quoting *T.Y.*, 584 F.3d at 419); *Brad K. v. Bd. of Educ. of City of Chicago,* 787

F. Supp. 2d 734, 740 (N.D. Ill. 2011) ("The physical location for implementing an IEP need not be included in the IEP.").[13]

In her decision, the ALJ noted that:

> First, this Decision has already found that District was not required to identify a specific non-public school in Student's IEP.  Student has provided no legal authority for his contention that a district cannot unilaterally identify an appropriate non-public school placement or that a student's parents must be involved in the determining which non-public school a district will offer.

[A.R. at 1094, ¶ 33.]

Plaintiff argues that the cases relied on by the ALJ are readily distinguishable from the current case and assert that there is a fundamental difference between District offering placements at a public school within District's boundaries, as opposed to offering a non-public school.  [Doc. No. 23 at 22-25.]  In support, Plaintiff relies on *Glendale Unified Sch. Dist. v. Almasi*, 122 F. Supp. 2d 1093, (C.D. Cal 2000), and *A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672 (4th Cir. 2007).  The Court declines to take Plaintiff's position, finding it unsupported by the cases cited and contrary to "the weight of authority holding the physical location of the school is an administrative decision."  *Deer Valley*, 942 F. Supp. 2d at 889.  Rather, the Court finds that Parents exercised their procedural right and participated in the creation of the IEP but they did not have a procedural right to choose the physical school to implement the IEP.  *See Id.*

In *Glendale,* the Court was confronted with the issue of whether including multiple placement options in the IEP comported with the specific placement offer requirements of *Union* and concluded that after discussing the various programs "[i[t was the District's

---

[13] *See also N.S. v. Hawaii Dep't of Educ.*, Civ. NO. 09-00343 SOM/KSC, 2010 WL 2348664, at *8 (D. Haw. June 9, 2010) ("the physical location where a placement will be implemented is an administrative decision made by the DOE, it is not necessarily included in the IEP.  The IEP instead sets forth the IEP team's decisions."); *Brad K.,* 787 F. Supp. 2d at 743-44 ("[T]he mere fact that the ultimate location of the placement is determined by an administrator in a central office does not violate the procedural mandates of IDEA.").

responsibility to use its expertise to decide which program was best suited for [student's] unique needs*." Glendale*, 122 F. Supp. 2d at 1108.  Judge Pregerson reasoned that offering multiple placements options "puts an undue burden on a parent to eliminate potentially inappropriate placements, and makes it more difficult for a parent to decide whether to accept or challenge the school district's offer." *Id.* at 1107.  Unlike here, the placement options in *Glendale* included various types of classrooms located at a number of different school sites, with varying school-day durations, only one of which was appropriate for the student's unique needs. *Id.* at 1108.

Likewise, *A.K.* is distinguishable and, while instructive, is not binding on this Court. In *A.K.*, the IEP in question did not identify any particular school and the District offered five private day school options without establishing if any would be a satisfactory fit or could fulfill the student's IEP. *A.K.*, 484 F.3d at 681.  The Fourth Circuit concluded that "'[a]fter discussing the advantages and disadvantages of various programs that might serve the needs of a particular child' it is incumbent on the school district to utilize its expertise to 'clearly identify an appropriate placement from the range of possibilities.'" *Id.* (quoting *Glendale,* 122 F. Supp. 2d at 1108).[14]  The court emphasized that it was not holding "that a school district could never offer a FAPE without identifying a particular location at which the special education services are expected to be provided." *Id.* at 682.  Rather an IEP must identify a particular school in order to offer a FAPE in cases where "parents express doubt concerning the existence of a particular school that can satisfactorily provide the level of services that the IEP describes." *Id.*  But, the concern in this case is not whether a school exists, rather it is which school is an appropriate placement to fulfill A.V.'s IEP.

---

[14] In reaching its conclusion the court explained that "[t]he identification of a particular school in the IEP indicates to the parents that the school district has carefully considered and selected a school that will meet the unique needs of the student." *A.K.*, 484 F.3d at 681 (citing *Glendale,* 122 F. Supp. 2d at 1107).  Further, the court noted that "an offer that fails to identify the school at which special educational services are expected to be provided may not be sufficiently specific for the parents to effectively evaluate. *Id.* at 680 (citing *Union*, 15 F.3d at 1526).

In contrast to the situations in the cases cited by Plaintiff, here, as discussed in more detail above, student stipulated that he was not contesting whether Sierra was appropriate and could meet his needs, the parties knew that Sierra was being considered as a possible placement, were aware of the substance of the program being offered, and fully participated in the IEP meetings and administrative hearing in order to determine whether the proposed program was appropriate.  *See Fermin ex rel. Fermin v. San Mateo-Foster City Sch. Dist.*, 2000 WL 1130070, at *10-11 (N.D. Cal. Aug. 4, 2000) (District not disclosing the exact location of the program was not a denial of FAPE because parties were aware of the substance of program being offered, participated in the IEP meeting determining the appropriateness of the proposed program, and the location did not affect the appropriateness of the proposed program).

Furthermore, Sierra was offered after the IEP had been crafted in January 2015 with parental involvement and because it was determined that Sierra could implement the IEP the team had agreed upon and provide A.V's needs and related services.  Therefore District's unilateral selection of Sierra did not violate the IDEA.  *See, e.g., A.M.,* 933 F. Supp. 2d at 199-201 (holding that parent's right to participate in the development of an IEP was not violated when District unilaterally selected and offered a particular school after an IEP has been presented and revised with parental involvement).  *See also Deer Valley*, 942 F. Supp. 2d at 889 (finding that when "the parent has fully participated in developing the IEP plan, a District has the administrative authority to choose the physical location of the school without the parent's additional participation."); *Brad K.* 787 F. Supp. 2d at 743-44 ("[T]he mere fact that the ultimate location of the placement is determined by an administrator in a central office does not violate the procedural mandates of IDEA.").

Thus, the Court will not reverse the ALJ's finding that District was not required to offer a specific single program for student and must specify the exact location of the proposed program when it offers a non-public school.

In sum, it is clear from the record that the decision to offer Sierra was not presented to Parents without any consideration of their opinions and input on the matter.  Rather, the

evidence in the record points to Parents' and A.V.'s advocate's participation in the process, including discussions surrounding facility options.  Based on the foregoing, the Court finds that the ALJ did not err in concluding that Sierra was not predetermined, and upholds her decision on this issue.

### B. ALJ Correctly Decided that the Failure to Include a Representative from Sierra at the May 20, 2015, IEP Team Meeting Did Not Constitute a Denial of FAPE

Plaintiff's second procedural contention is that Parents were denied a FAPE by District's failure to have a member from Sierra attend the May 20, 2015 IEP team meeting.[15]

A school district has offered a "free appropriate public education if the program (1) address the child's unique needs, (2) provides adequate support services so the child can take advantage of the educational opportunities, and (3) is in accord with the individualized education program." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 893 (9th Cir. 1995) (citing *Rowley*, 458 U.S. at 188-89); *see also M.P. v. Poway Unified Sch. Dist.*, No. 09 CV 1627 JLS (NLS), 2010 WL 2735759 (S.D. Cal. July 12, 2010).

Undoubtedly, "[a]n IEP which addresses the unique needs of the child cannot be developed if those people who are most familiar with the child's needs are not involved or fully informed." *Amanda J.*, 267 F.3d at 892.  To ensure parental involvement in the creation of an IEP the IDEA proscribes procedures to be followed.  But, "not all procedural violations by a school district in implementing the IDEA will necessarily result in the denial of a FAPE.  Procedural error [] constitutes the denial of a FAPE only when it results in lost educational opportunity for the child, or when it significantly restricts parental participation in the IEP formation." *M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 653 (9th Cir. 2004) (collecting cases).  The absence of an IEP team member is one such

---

[15] The Court agrees with Defendant that Plaintiff has abandoned his related claim that Parents did not meaningfully participate in the May 20, 2015 team meeting.  [Doc. No. 26 at 11.]  Neither Plaintiff's motion for summary judgment nor his opposition make any mention of this claim.

procedural violation that, standing alone, will not result in a denial of FAPE; there must be the loss of educational opportunity or serious infringement on a parent's participation. *Target Range,* 960 F.2d 1484; *R.B.,* 496 F.3d at 938.

34 CFR Section 300.325(a) provides that when developing IEPs for private school placements by public agencies:

> (1) Before a public agency places a child with a disability in, or refers a child to, a private school or facility, the agency must initiate and conduct a meeting to develop an IEP for the child in accordance with §§ 300.320 and 300.324.
>
> (2) The agency must ensure that a representative of the private school or facility attends the meeting. If the representative cannot attend, the agency must use other methods to ensure participation by the private school or facility, including individual or conference telephone calls.

In its decision, the ALJ addressed Plaintiff's argument that District committed a procedural violation by failing to ensure that a representative from Sierra attended the May 20, 2015 IEP team meeting. [A.R. at 1095-96.] The ALJ found that A.V. "had failed to present any evidence that he lost educational benefit or was denied a FAPE by District's failure to have a Sierra representative present at the May 20, 2015 IEP Meeting." [*Id.* at 1096, ¶ 43.] Absent from the ALJ's decision was an express conclusion that that District violated 34 CFR Section 300.325(a).

However, it is clear from the record, that regardless of the reasons or cause,[16] District committed a procedural violation in not inviting a representative from Sierra to the May

---

[16] Plaintiff's position that "no such facts exist in this case" to support the ALJ's finding Sierra had a "policy" of not attending IEP meetings prior to student enrollment is incorrect. At the OAH, Brandi Eagling, Director of Sierra, testified that Sierra does not normally not attend IEP meetings until a student is enrolled and/or accepted into its program and receiving its services. [A.R. at 1515-16.] The ALJ attempted to clarify Sierra's policy and the following exchange occurred between the ALJ and Ms Eagling:

> ALJ Question: The first IEP meeting that Sierra would attend would be the 30-day IEP that's normally held 30 days after a student first begins?
>
> Ms. Eagling Answer: Sometimes it can be sooner, but we do not attend until the student's enrolled into our program and receiving services from us.

*Id.* at 1115:21-1116:3.

20, 2015, IEP team meeting. Therefore, the Court's analysis will focus on whether the violation affected Parents' active participation in the IEP process.

Plaintiff argues that the procedural violation is material because neither Parents, the IEP team, nor Sierra were offered an opportunity to discuss Sierra's program with the IEP team. [Doc. No. 23 at 25-29.] Further, Plaintiff contends that *Student R.A. v. West Contra Cost Unified Sch. Dist.*, 14-cv-0931-PJH, 2015 WL 4914795, at *19 (N.D. Cal. Aug. 17, 2015), relied upon by the ALJ is readily distinguishable from the case at hand and should not be followed by this Court. [Doc. No. 23 at 27.] Relatedly, Plaintiff asserts that unlike in *R.A*, Parents' opinions and input were not taken into consideration when Sierra was offered at as placement. [*Id.*] The Court disagrees.

In *R.A.*, the Northern District rejected the argument that a procedural technical violation of 34 C.F.R. § 300.325, such as the absence of team members at an IEP meeting, will automatically result in a denial of FAPE. Rather, the court determined that the question is whether the rule violation results in a "loss of educational opportunity or serious infringement on a parent's participation," resulting in a denial of FAPE. *R.A.*, 2015 WL 4914795, at *19. The court concluded that the absence of a team member at an IEP meeting did not rise to the level of a denial of a FAPE. *Id.* In so doing, the court construed the interactions that occurred subsequent to the team meeting as evidence that the violation did not seriously infringe on parents' participation in the IEP process. *Id.* at 19-20. Specifically, the court noted that following the offer the district arranged for parents to

_____

Further, the administrative record also illustrates that Parents were active in their opposition to A.V. attending Sierra which, consequently played a role in the absence of a Sierra staff members from the IEP meeting. At the time of the May 20, 2015 the enrollment process for A.V. to attend Sierra had not begun. District had not sent Sierra a referral package [*Id.* at 1516-18] and Parents had not begun the enrollment process on their own. [*Id.* p. 1518] A District policy prohibited District from forwarding A.V.'s information and educational needs to Sierra without permission from Parents. [*Id.* at 1798-800, 1825.] Parents had not given permission to the District to do so. [*Id.*]

meet with the school personnel so that any questions and concerns could be addressed, parents visited the school and were advised by the school what the next steps would be, but that parents did not take them.  *Id.* at 19.

In the case at bar, as in *R.A.*, there is "substantial evidence in the record of an interactive and dynamic process between the parents and the various IEP team members" regardless of the absence of one of those members at one of the meetings.  *Id.* at. 19.  For example, Parents met with Sierra immediately prior to the May 20, 2015, team meeting, discussed Sierra with the other team members at the May 20, 2015, meeting, and even stipulated that "Student is not contesting whether Sierra is appropriate, could meet Student's need or constituted a FAPE in the LRE."  [A.R. at 1058:25-1059:2.]  Moreover, at that meeting District considered the changes to A.V.'s needs and goals that were proposed by Parents and Dr. Frampton in the January meeting and incorporated them into A.V.'s IEP.  [*Id.* at 411-38.]

Actions of a school district cannot, as Plaintiff suggests, be judged exclusively in hindsight.  "An IEP is a snapshot, not a retrospective.  In striving for 'appropriateness,' an IEP must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated."  *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 992 (1st Cir. 1990).  What happened subsequent to the OAH hearing is not relevant to the Court's inquiry.  The IEP developed for A.V was done so in light of his unique needs, and, although Parents ultimately did not sign it, they were clearly involved in the process.  *Amanda J.*, 267 F.3d at 892.

Given these facts, and given the rule in *R.A*, the Court concludes that the ALJ correctly determined that Sierra's absence at the May 20 meeting did not result in a denial of FAPE.  Accordingly, the Court upholds the ALJ's decision on this issue.

### C.  ALJ Correctly Decided that A.V. was Denied a FAPE Between December 20, 2014, and April 26, 2015

District seeks to reverse the ALJ's decision that A.V. was denied a FAPE.  [Doc. No 24-1 at 17-25.]  District argues that it offered A.V. a FAPE because the May 20, 2015, IEP

document "is actually just an amendment to the District's initial offer of a non-public school that the ALJ found to be appropriate." [*Id.* at 18:22-23; *see also* 23-24.] Relatedly, District argues that it did not deny A.V. a FAPE by failing to offer a specific non-public school on January 23, 2015, and assert that the ALJ reached its decision on these issues by focusing on irrelevant facts and by formulating an issue not presented in this case. [Doc. No. 24-1 at 19-23.]

School districts are responsible for the education of children and are required to offer eligible children a free appropriate public education. *Rowley,* 458 U.S. at 181; 20 U.S.C. §§ 1409(9), 1412(1)(A). IDEA's main purpose is to "ensure that all children with disabilities have available to them a free appropriate public education." *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2495 (2009). In order to accomplish its purpose IDEA requires educational agencies have each child's IEP in effect at the beginning of the school year. 20 U.S.C. § 1414(d)(2)(a). An education authority's failure to develop an IEP for a student prior to the beginning of a school year results in a violation of IDEA. *See D.C. v. Dept. of Educ.*, 550 F. Supp. 2d 1238, 1250 (D. Haw. 2008) (citing *Gadsby v. Grasmick*, 109 F.3d 940, 950 (4th Cir. 1997)).

In deciding whether Parents were denied a FAPE, the ALJ first addressed whether District's failure to identify a specific school in the January 23, 2015, IEP was a procedural violation. *(See supra,* section III, A.) After finding no procedural violation, the ALJ considered the issue of who was responsible for providing A.V. with a FAPE in the interim period between the expiration of the settlement agreement and the eventual offer of Sierra. [A.R. at 1091-92 ¶¶ 19-25.] The ALJ held that, as of December 19, 2014, District was required to offer A.V. an alternative placement at a District school and that, as of January 23, 2015, District was required to provide A.V. with placement at a non-public school. [*Id.* at 1092 ¶¶ 22, 24.] The ALJ concluded that District's delay in identifying and offering A.V. a non-public school denied him a FAPE. [*Id.* at ¶ 24.] In so finding, the ALJ called attention to the fact that during this four month period A.V. was in limbo, with District declining to pay for Banyan Tree but failing to offer an alternative. [*Id.* at ¶ 22.] Further,

the ALJ reiterated that school districts have a responsibility to provide a free education to eligible children, explaining that:

> District here lost sight of the fact that for at least four months, it failed to offer Student a placement, appropriate or otherwise, forcing Parents to pay for an education for which District was legally responsible. . . . Here, District offered no placement.  Parents had no choice but to continue Student's enrollment at Banyan Tree, . . .

[A.R. at 1092 ¶ 23.]

District's position that the ALJ improperly inserted and decided an issue not in dispute into the case is incorrect.  [Doc. No. 24-1, at 21-22.]  The California Education Code provides that the initial due process notice must include "a description of the nature of the problem" and limits the OAH hearing to those raised in the notice.  Cal. Educ. Code § 56502(c)(1)(C) and (i).  Both A.V.'s Issue number 1 and District's Issue number 7 specifically address the denial of FAPE by failing to offer an appropriate placement.[17] Therefore, the Court concludes that the ALJ did not insert an issue not it dispute, placement was a problem clearly identified by both parties.

Furthermore, the Court finds District's additional arguments in favor of reversal unconvincing.  District's arguments overlook its responsibility and erroneously concludes that the ALJ's finding was based on the timeliness of the District's development of student's IEP.  Similarly, District's assertion that the ALJ's conclusion regarding the May 20, 2015, offer of placement at Sierra provided student with a FAPE dictate that District fully prevail on Issues 1 and 7 is unavailing.  [Doc. No. 24-1 at 23-24.]  Moreover, the Court finds District's additional arguments in favor of reversal unsupported by the record and a mischaracterization of the ALJ's reasoning and statements.  Contrary to District's

---

[17] Specifically Student's Issue 1 provided: "Did District deny Student a free appropriate public education by failing to make an appropriate, specific offer of placement on or after December 2014?"  [A.R. at 1061.]  District's Issue 7 states: "Did District offer Student a FAPE in the least restrictive environment in the triennial IEP dated December 15, 2014, as amended on January 23, 2015, and May 20, 2015?"  [*Id.* at 1062.]

characterization, the statements made by the ALJ do not "inaccurately and prejudicially suggest that A.V. was not receiving any education at all." [Doc. No. 24-1 at 22:8-10.] Neither did the ALJ, as District suggests, improperly "conflate the procedural issues around naming a non-public school with her negative impression regarding the parties' settlement efforts." [Doc. No. 24-1 at 23:9-11.]

Rather, the ALJ appropriately focused on the District's continuing responsibility to provide a free appropriate public education to A.V., an eligible student, and his Parents, irrespective of the ongoing negotiations between the parties and regardless of the fact that an IEP was being developed. *See Rowley,* 458 U.S. at 181 (school districts are responsible for the education of children and are required to offer eligible children a free appropriate public education.); 20 U.S.C. §§ 1409(9), 1412(1)(A); *Forest Grove,* 129 S. Ct. at 2495. Admittedly, the settlement agreement did not require the offer of FAPE be made before it expired, but the IDEA requires District provide A.V. with one. Thus, upon the expiration of the settlement agreement, the obligation to provide A.V. with a FAPE reverted back to District. This obligation was not excused because the parties were developing the IEP.

Here, it is undisputed that District did not make an offer of placement at any school, until over four months after the settlement agreement terminated on December 19, 2014.[18] In the interim Parents shouldered the burden for A.V.'s education while District continued to object to Banyan and refused to pay A.V's tuition there. Parents were offered no alternative placement options. By refusing to fund Banyan Tree, or offer an alternative facility, District was not fulfilling its obligation to provide "at public expense, under public supervision and direction, and without charge" an education for A.V. 20 U.S.C. § 1401(9)(A).

---

[18] At the December 15, 2014, IEP team meeting, District declined to continue to pay for student's education at Banyan but offered no alternative placement to Parents and no IEP was in place. [A.R. at 328-358, 1826-27.] At the subsequent January 23, 2015, IEP team meeting, the IEP was drafted and it was agreed that student would be placed in a non-public school, however the actual school that student was to attend was not identified by District. [*Id.* at 364, 1750-57, 1826, 2148-49.]

Accordingly, the Court finds that the District did not meet its responsibility to provide A.V. with a free appropriate public education. This failure, in turn resulted in Parents being financially responsible for their child's education. Thus, the Court upholds the ALJ's decision on the issues related to whether A.V. received a FAPE.

### D.  The ALJ Properly Awarded Reimbursement to Plaintiff

District also seeks to reverse the ALJ's award of reimbursement. [Doc. No. 24-1 at 25-31.] District contends that the terms of settlement agreement preclude Parents from receiving reimbursement. [*Id.* at 25-28.] In the alternative, District asserts that any award for reimbursement for Banyan should be reduced or denied based on Parents' actions during settlement. [*Id.* at 28-31.]

"If a parent believes that a school district has failed to offer a free appropriate public education, parents may place an eligible child in an appropriate private program." *Union*, 15 F.3d at 1524. Such parents may be entitled to reimbursement if the educational agency did not make a FAPE available to the student in a timely manner prior to the placement, and the placement was appropriate. 20 U.S.C. § 1412(a)(10)(C)(ii). *See Sch. Comm. of Town of Burlington v. Dep't of Educ.* 471 U.S. 359, 369-370 (1985) (parents may receive reimbursement under IDEA when "a court determines that a private placement . . . was proper . . . and that an [IEP] calling for placement in a public school was inappropriate."); *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (parents are "entitled to reimbursement award only if a federal court concludes both that the public placement violated IDEA and that the private placement was proper under the Act."). *See also Target Range,* 960 F.2d at 1485 (if a school district fails to provide FAPE from which a child can benefit, a parent has an equitable right to reimbursement for a private educational placement.).

Notably, the IDEA provides for the reduction or denial of reimbursement payments for the cost of private school placement in certain circumstances, including "upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii)(III). Because the authority to grant reimbursement is discretionary

3:16-cv-0803-CAB-(BLM)

"equitable considerations [relating to the reasonableness of the action taken by the parents] are relevant in fashioning relief." *Burlington*, 471 U.S. at 374.  As the Ninth Circuit explained in *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047 (9th Cir. 2012), when weighing reimbursement of private placement a court must:

> exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether and how much reimbursement is appropriate. *C.B. [ex re. Baquerizo v. Garden Grove Unified Sch. Dist., 635 F.3d 1155,] 1159 [(9th Cir. 2011)].  In making this determination, the district court may consider all relevant equitable factors, including, inter alia, notice to the school district before initiating the alternative placement; the existence of other, more suitable placements; the parents' efforts in securing the alternative placement; and the level of cooperation by the school district. *Forest Grove* [], 523 F.3d at 1088-89 []. These factors make clear that "[t]he conduct of *both* parties must be reviewed to determine whether relief is appropriate." *W.G.,* 960 F.2d at 1486 (emphasis added).

*Anchorage Sch. Dist. v. M.P.*, 689 F.3d at 1059.

In deciding the reimbursement issue, the ALJ dealt directly with District's contention that the settlement agreement precluded or limits reimbursement for Banyan. [A.R. at 1102-04.]  The ALJ was not persuaded by District's argument finding that:

> [t]he agreement specifically stated that Parents would be responsible for continued funding of Banyan Tree if they rejected District's offer of placement.  District did not make an actual placement available to Student until April 26, 2015, when it offered Student placement at Sierra.  Student had no place to go in the interim.  It was not until Parents rejected the placement that the terms of the agreement applied.

> Even if there was a viable argument that Parents should have enrolled Student in a District special day class after the end of Winter Break 2014-2015, even if not offered by District at any time during the January 23, 2015 IEP team meeting, Student's IEP team clarified that a special day class placement was not appropriate for him. . . .  However, District, which had not predetermined Student's placement, did not have a recommendation for a non-public school that day. . . .  Therefore, as of January 23, 2015, there was no District-offered placement available for Student to attend that would meet his needs.  Student was entitled to a non-public placement as of the date, but District did not provide one until April 26, 2015.

[A.R. at 1104 ¶¶ 79, 80.]

The Ninth Circuit confronted a similar situation in *Sam. K. v. State of Haw. Dep't of Educ.,* 788 F.3d 1033 (9th Cir. 2015).   In *Sam K,* a student's family entered into a settlement agreement with the department of education that provided for reimbursement of private school tuition for the proceeding school year and continued funding of the private placement until the end of the 2009-2010 school year.  *Id.* at 1036.  The agreement required Parents participate in an "IEP Reevaluation meeting" by the end of June 2010.  *Id.* at 1036. During the months that followed the parties met several times to discuss student's IEP, but no different placement was ever agreed upon.  The department of education did not present a specific public school placement until half way through that school year, and did not make its position final until March 2011.  The Ninth Circuit held that student's parents were entitled to reimbursement of private tuition because "[b]y waiting so long into that school year to propose a different placement, the [department of education] tacitly consented to [student's] enrollment" at the private school.  *Id.* at 1040.  In so holding, the court noted that the department knew that student was going continue to be enrolled at the school and "necessarily consented to that enrollment for that school year because it had not offered another alternative." *Id.*

In this case, as in *Sam K.,* the settlement agreement provided for A.V.'s special education placement through a defined period and upon its expiration District waited months before offering a specific alternative placement.  Here, the settlement agreement made no reference to where A.V. would transition upon its expiration and only mentions placement in a District mild-to-moderate special day class as a stay put in the event of a dispute.  [A.R. at 1008-17.]  Moreover, notwithstanding the provisions surrounding convening an IEP team meeting and the consequences of Parents' refusal to consent to the completed IEP, the agreement was silent as to where A.V.'s placement would be should the IEP documentation not be completed or an offer of FAPE not be made prior to its

expiration. [*Id.* at 1012-13.[19]]  While the IEP for a non-public school was offered at the January 23, 2015, team meeting, District did not identify and offer Sierra as the non-public school alternative until April 26, 2015. [*Id.* at 367.]  Similar to the education agency in *Sam K.,* District was aware that, in the interim between the agreements expiration and the offer of Sierra, Parents were continuing to keep A.V. at Banyan.  Given these facts, the Court holds that District "necessarily consented to the enrollment for that school year because it had not offered another alternative." *Sam K.* 788 F.3d at 10140.

Relying on *Bd. of Educ. of the Penfield Cent. Dist.*, 44 IDELR 112, 105 LRP 43655 (SEA NY April 6, 2005), District make the alternate argument that Parents conduct during the settlement negotiations bars this Court from providing them reimbursement, pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii)(III). [Doc. No. 24-1 at 28-31.]  In *Penfield*, parents were denied reimbursement for private reading services that were similar to the services offered by the District that parent requested not be provided by District.  The Court finds District's argument unpersuasive and the case it relies on readily distinguishable.

Here, unlike in *Penfield*, Parents were never formally offered a similar placement option for A.V. until months after the IEP was drafted.  Although all parties agreed to a non-public school placement and NewBridge was being contemplated as A.V.'s non-public placement during the negotiations, Sierra was not identified and offered as the specific facility being proposed for A.V. until April 2015.  Further, the Court is unaware of any legal authority that contradicts the ALJ's conclusion that "Parents' settlement posture is

---

[19] The settlement agreement included a number of pertinent provisions.  It required the District conduct A.V.'s triennial assessment during the Fall of 2014 and convene a triennial IEP meeting between October 19, 2014, and December 19, 2014. [A. R. at 1010.]  The agreement also provided that if, due to circumstances entirely within the District's control, the District failed to timely convene the triennial IEP team meeting and make a FAPE offer to A.V., then he could bring a due process hearing claim against District.  [*Id.* at 1012.]  However, if the triennial IEP meeting was not convened before December 19, 2014 due to circumstances/reasons outside of the District's control and/or for reasons not attributable to the District, then the agreement precluded A.V. from being any claims against District for untimely holding the IEP team meeting and/or delay in offering the Student a FAPE on or before December 19, 2014.  [*Id.* at 1013.]

not dispositive of whether they are entitled to reimbursement for the costs incurred" in retaining A.V. at Banyan while they awaited District's offer of placement. [A.R. at 1104 ¶ 78.] Moreover, the Court has thoroughly reviewed the record and finds nothing untoward in Parents' conduct during the negotiations that suggests their conduct was unreasonable. For example, Parents provided District with explanations why they were rejecting the proposed settlements, including communicating their concerns that the proposed settlement was restricting A.V.'s rights under the IDEA. [S.R. at 16, 46, 48-56, 62-72, 89-91, 96-117, 123-124; A.R. at 603-04.]  Although it disputes Parents' interpretation of its settlement offers, even District does acknowledges "that the repeated rejection of its settlement offers were not necessarily done in bad faith on the Parents' part." [Doc. No. 24-1 at 30:7-8.]

What is more, upon consideration of the equitable factors, the Court concludes that Parents' conduct was reasonable and did not taint the collaborative IEP process.  As discussed in detail above, the IEP process here was dynamic with the active participation of all involved.  The evidence demonstrates that although Parents were focused on A.V. attending NewBridge, they collaborated with the District in drafting the IEP and repeatedly requested that A.V. be kept at Banyan until the parties could agree on the specific non-public school A.V. was to attend.  Clearly, District was aware that A.V was attending Banyan and yet did not suggest an alternate school until April 2015.  *See Forest Grove,* 523 F.3d 1, at 1088-89.  Consequently, the Court holds that Parents' conduct was not unreasonable and does not warrant a reduction in the reimbursement award.

In light of the foregoing, the Court finds Parents' decision to retain A.V at Banyan warranted and concludes that the ALJ correctly determined that Parents were entitled to full reimbursement for expenses associated with Banyan through the end of the school year. Accordingly, the Court upholds the ALJ's decision on this issue.

### E. Prevailing Party Status

Plaintiff originally argued that the District had failed to provide A.V. with a FAPE based on six issues, excluding subparts.  District, in turn, presented two issues for the ALJ to determine.  District prevailed on a majority of the issues, with the ALJ finding that A.V.

prevailed on Issues 2(a) and 8 and on portions of Issues 1 and 7. [A.R. at 1106]   As discussed above, the ALJ's findings of fact and conclusions of law on these issues were correct.  Therefore, the Plaintiff should be considered the prevailing party.

The IDEA provides that "the court, in its discretion may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability. 20 U.S.C. § 1451(i)(3)(B).  "The prevailing party inquiry does not turn on the magnitude of the relief obtained."  *Farrar v. Hobby,* 506 U.S. 103, 111 (1992).  Rather "a prevailing party" is one who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'"  *Van Duyn,* 502 F.3d at 825 (quoting *Parents of Student W. v. Puyallup Sch. Dist., No. 3,* 31 F.3d 1489, 1498 (9th Cir. 1994)).

Specifically, "[t]he success must materially alter the parties' legal relationship, cannot be *de minimis* and must be causally linked to the litigation brought."  *Van Duyn,* 502 F. 3d 825. (citations omitted).  *See also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relations of the parties. . . .').  A legal relationship has been materially altered where "the plaintiff become entitled to enforce a judgment, consent decree, or settlement against the defendant." *Fisher v. SJB-P.D. Inc.,* 214 F. 3d 1115, 1118 (9th Cir. 2000) (quoting *Farrar,* 506 U.S. at 113 (1992)); *see also Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 373 F.3d 857, 865 (9th Cir. 2004); *V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.,* 484 F.3d 1230, 1233 (9th Cir. 2007).

Here, Plaintiff was the prevailing party at the ALJ hearing because Plaintiff was afforded significant relief that materially altered the relationship of the parties.  A.V. was found to have been denied a FAPE between December 2014 and April 2015.  To remedy the denial of a FAPE, the ALJ required District to reimburse Parents for expenses associated at Banyan through the end of the 2015 school year.  [A.R. at 1105 ¶ 83.]  The fact that the ALJ ruled in favor of the District on other issues does not change the fact that Plaintiff prevailed at the ALJ hearing.

## IV.    CONCLUSION

For those reasons, the Court exercises it discretion, affords due weight to the ALJ's thorough determinations and affirms its decision on all issues.  Accordingly, the Court **DENIES** both motions for summary judgment.

It is **FURTHER ORDERED** that Plaintiff's application for reasonable and necessary fees be filed by **March 9, 2017**.  Plaintiff is reminded that as the applicant, he "bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."  *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

**IT IS SO ORDERED**.

Dated:  February 23, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge

3:16-cv-0803-CAB-(BLM)