UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.V. By and Through His Guardians Ad Litem ANDREA VAZ ANTUNES and ANTONIO VAZ ANTUNES,<br><br>Plaintiff,<br><br>v.<br><br>LEMON GROVE SCHOOL DISTRICT,<br><br>Defendant. | Case No.: 3:16-cv-0803-CAB-(BLM)<br><br>**ORDER ON MOTION FOR ATTORNEYS' FEES**<br>**[Doc. No. 30]** |

This matter comes before the Court on Plaintiff A.V.'s ("A.V.") Motion for Attorneys' Fees Under the Individuals with Disabilities Education Act ("IDEA"). [Doc. No. 30.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral arguments in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court grants in part the motion.

I. **BACKGROUND**

A.V. is a 12-year-old boy who resides within the Lemon Grove School District ("District") and suffers from dyslexia, auditory working memory, and visual processing deficits. A.V. was first determined to be eligible for special education in December 2007. In the years that followed, District provided A.V with a free appropriate public education

1

("FAPE") in both public and non-public schools and periodically assessed A.V. to evaluate his educational needs and progress and made any necessary adjustments. Beginning in December 2014, District and Parents began discussing where A.V should be placed moving forward but could not reach an agreement regarding which school A.V. should attend.

On April 24, 2015, Parents on behalf of A.V. filed a due process hearing request with the Office of Administrative Hearings ("OAH"). [Administrative Record ("A.R."). at 1-8.] The OAH complaint was amended on May 13, 2015, to include District's offer to placement at Sierra Academy ("Sierra'), a non-public school. [*Id.* at 13-24, 36.]

On May 26, 2015, District responded to Plaintiff's OAH complaint by making the required statutory settlement offer. [Doc. No. 21-2 at 119-121.] Subject to proof, District offered to reimburse Parents for the tuition and mileage reimbursement that they had paid to the non-public school Banyan Tree Foundations Academy ("Banyan"), dating back to January of 2015 to the end of the 2014-2015 school year. [*Id.*] District propounded that it would provide A.V. with a FAPE at Sierra and provide transportation to and from the school. [*Id.*] As an alternative to Sierra, District would authorize A.V.'s attendance at NewBridge, his Parents' school of choice, but Parents would be entirely responsible for transporting their son at no cost to District. [*Id.*] On June 5, 2015, Parents declined District's May 28, 2015, Statutory Settlement Offer claiming that the terms of the offer were overly broad and lacked specificity. [*Id.* at 123-24.] On August 28, 2015, District filed a complaint with the OAH to determine whether its offer of Sierra Academy constituted a FAPE. [A.R. at 67-74.]

On September 2, 2015, the OAH consolidated A.V. and District's cases. [*Id.* at 88-90.] In October and November of 2015 a six day OAH hearing was held before Administrative Law Judge Darrell Lepkowsky. On January 8, 2016, the ALJ issued a Decision.[1] [Doc. No. 1-1.] The ALJ found that A.V. was denied a FAPE between

---

[1] There were eight identified issues before the ALJ: (1) Did the District deny A.V. a FAPE by failing to make an appropriate, specific offer of placement on or after December 2014?; (2) Did District deny A.V.

December 20, 2014 and April 26, 2015, because District failed to make an appropriate, specific offer of placement between December 20, 2014, and April 26, 2015. [*Id.* at 30-33.] Further, the ALJ concluded that the District did not predetermine its offer of placement at Sierra and was not required to make the offer at an individualized education program ("IEP") team meeting. [*Id.* at 34-36.] Additionally, the ALJ held that the failure to have a representative from Sierra at the May 20, 2015, IEP team meeting was not a FAPE violation and that Parents had meaningfully participated in the meeting. [*Id.* at 36-41.] Furthermore, the ALJ found that the settlement discussions did not limit A.V.'s remedies, and held that A.V.'s Parents were entitled to reimbursement for A.V.'s tuition at Banyan from January 5, 2015, to June 10, 2015, totaling $27,030, and for mileage costs for transporting A.V. to Banyan in the amount of $1,604.67.[2] [*Id.* at 45-47.]

On April 4, 2016, A.V., by and through his Parents as guardians ad litem, filed a complaint in the Southern District of California for partial reversal of the decision of the OAH pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §

---

a FAPE with regard to the January 23, 2015 IEP team meeting by: (a) failing to offer a specific non-public school placement; and (b) failing timely to provide A.V. with a copy of the January 23, 2015 IEP document and meeting notes?; (3) Did the District's April 25, 2015 offer of placement at Sierra deny A.V. a FAPE, because: (a) District predetermined its offer of placement at Sierra; (b) District made the offer through correspondence between its attorney and A.V.'s attorney instead of at an IEP meeting; and, (c) District failed to convene an IEP team meeting to discuss A.V.'s placement subsequent to making the offer of placement?; (4) Did District deny A.V. a FAPE at the May 20, 2015 IEP meeting, by: (a) Failing to have a non-public school representative from Sierra present; and, (b) denying A.V's parents the opportunity to meaningfully participate in the meeting?; (5) Did District deny A.V. a FAPE by failing to conduct a vision therapy assessment at any time after the December 15, 2014 IEP meeting?; (6) Did District deny Student a FAPE from December 15, 2014, to the [date of the OAH hearing], by failing to make an appropriate and/or sufficient offer of occupational therapy, speech and language therapy, or vision therapy services?; (7) Did District offer A.V. a FAPE in the least restrictive environment in the triennial IEP dated December 15, 2014, as amended in January 23, 2015, and May 20, 2015?; (8) Does the settlement agreement between the parties, executed on February 28, 2014, and March 3, 2014, limit or otherwise preclude any remedy to which A.V. might otherwise be entitled for prevailing on any issue brought in this case? [A.R. at 1061-62.]

[2] Specifically, the ALJ found that A.V. prevailed on a portion of Issue 1; on Issue 2(a); on a portion of issue 7; and on Issue 8 [A.R. at 1106.]

1400 *et seq*.³ [Doc. No. 1]. On June 22, 2016, District filed a cross-complaint seeking partial reversal of the decision rendered by the OAH.⁴ [Doc. No. 14.]

On November 4, 2016, the parties filed cross motions for summary judgment. [Doc. Nos. 23, 24.] On February 24, 2017, this Court issues an Order affirming the ALJ's decision and denying both motions for summary judgment. [Doc. No. 29.] The Court also found that A.V. was a prevailing party at the ALJ hearing.

On March 6, 2017, Plaintiff filed his application for attorneys' fees, requesting a total of $122,477.73. [Doc. No. 30-2 at 14-15.] Defendant filed its opposition [Doc. No. 31] and Plaintiff filed his reply [Doc. No. 32].

## II. LEGAL STANDARD

The IDEA provides that "the court, in its discretion may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1451(i)(3)(B). "The prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby,* 506 U.S. 103, 111 (1992). Rather "'a prevailing party' is one who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Van Duyn ex rel. Van Duyn v. Baker*

---

³ In his complaint Plaintiff alleged that the ALJ erred in holding that Defendant's April 25, 2015, offer of placement at Sierra was not a predetermination (Issue 3(a)). [Doc. No 1 ¶ 21.] Further, Plaintiff alleged that the ALJ was incorrect in ruling that the failure to have a non-public school representative at the May 20, 2015, IEP meeting was not a denial of FAPE (Issue 4(a)). [*Id.* ¶ 22.] Relatedly, Plaintiff also claimed that the ALJ incorrectly ruled that Parents were not denied a meaningful opportunity to participate in the May 20, 2015, IEP meeting (Issue 4(b)). [*Id.*] Plaintiff also sought reimbursement of reasonable attorneys' fees as the prevailing party in the OAH proceeding, as well as attorneys' fees incurred as a result of filing this action. [*Id.* ¶ 24.]

⁴ Defendant's cross complaint included multiple challenges to the ALJ's findings. First, Defendant contended that the OAH erred when it ruled that Plaintiff was denied a FAPE. (Issues 1, 2a, 7). [Doc. No. 14 ¶ 22.] Second, Defendant asserted that the ALJ erred in allowing Plaintiff an award of remedies and by deciding that Parents were entitled to tuition reimbursement for A.V.'s time at Banyan after December 20, 2014 (Issue 8). [*Id.* ¶¶ 25, 26, 28.] Relatedly, Defendant argued that the ALJ did not give due weight to the ongoing settlement discussions between the Parties or the offers made by the District, or fully consider the District's efforts to resolve Plaintiff's placement (Issue 8). [*Id.* ¶¶ 23, 24.] Fourth, Defendant argued that Plaintiff should be not be accorded prevailing party status. [*Id.* ¶ 30.]

*Sch. Dist. 5J,* 502 F.3d 811, 825 (9th Cir. 2007) (quoting *Parents of Student W. v. Puyallup Sch. Dist., No. 3,* 31 F.3d 1489, 1498 (9th Cir. 1994)).[5]

The most useful starting point for determining attorney's fees awarded under the IDEA is by performing the lodestar calculation – the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). For a fee request to be adjudged reasonable it must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 434. *See also Webb v. Bd. Of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 242 (1985) (Where a statute provides for fee shifting in connection with litigation, "[t]he time that is compensable under [that statute] is that 'reasonably expended on the litigation.'"). Counsel for the prevailing party are therefore cautioned to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433.

Generally, a partially prevailing plaintiff may not recover fees for her unsuccessful claims because "the level of a plaintiff's successes is relevant to the amount of fees to be awarded." *Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1118-1121 (9th Cir. 2006) (adopting the Supreme Court's degree of success principles enumerated in *Hensley* to attorney's fees awarded under the IDEA). In these situations, a district court has discretion in deciding whether to attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. *Hensley*, 461 U.S. at 437.

---

[5] Specifically, "[t]he success must materially alter the parties' legal relationship, cannot be *de minimis* and must be causally linked to the litigation brought." *Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J,* 502 F. 3d 811, at 825 (9th Cir. 2007) (citations omitted). *See also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relations of the parties. . . ."). A legal relationship has been materially altered where "the plaintiff become entitled to enforce a judgment, consent decree, or settlement against the defendant." *Fisher v. SJB-P.D. Inc.,* 214 F. 3d 1115, 1118 (9th Cir. 2000) (quoting *Farrar,* 506 U.S. at 113 (1992)); *see also Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 373 F.3d 857, 865 (9th Cir. 2004); *V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.,* 484 F.3d 1230, 1233 (9th Cir. 2007)

## III. DISCUSSION

Having previously awarded Plaintiff prevailing party status,[6] the Court will turn to the requested fee amount to determine whether it's reasonable.

With his motion, Plaintiff submits a declaration from his counsel along with supporting documentation that provide an itemized description of the time spent by his counsel on this matter beginning on August 21, 2014 and ending on March 1, 2017. [Doc. No. 30-3.] The declaration also sets forth counsel and his colleagues' qualifications and hourly rates. Plaintiff requests a total fee award in the amount of a total of $122,477.73, demanding reimbursement of $74,105.90 for the fees associated with the due process hearing and $48,371.47 in fees associated with the district court claim. [Doc. No. 30-2 at 14-15.] Defendant does not dispute the hourly rate but takes issue with Plaintiff's inclusion of fees to cover attendance at IEP meetings or other general representation activities which occurred prior to the initiation of the administrative proceeding. [Doc. No 31 at 6-11.] Additionally, Defendant claims that Plaintiff may not recover fees incurred after his rejection of the district's pre-hearing settlement offer. [*Id.* at 11-18.] Finally Defendant asserts that the fee award must be reduced to reflect Plaintiff's degree of success and Plaintiff may not recover attorneys' fees for his district court appeal. [*Id.* at 18-23.]

### A. Inclusion of fees incurred after rejection of district's pre-hearing settlement offer

Defendant argues that Plaintiff should not recover fees for any work performed by his attorney subsequent to the rejection the timely written offer it tendered on May 28,

---

[6] In its earlier order denying both cross motions for summary judgment this Court concluded: "Plaintiff was afforded significant relief that materially altered the relationship of the parties. A.V. was found to have been denied a FAPE between December 2014 and April 2015. To remedy the denial of a FAPE, the ALJ required District to reimburse Parents for expenses associated with Banyan through the end of the 2015 school year. [A.R. 1105 ¶ 83.] The fact that the ALJ ruled in favor of the District on other issues does not change the fact that Plaintiff prevailed at the ALJ hearing." [Doc. No, 29 at 32:22-28.]

2015. Further, Defendant asserts that the ALJ's award was "not more favorable to the parents that the offer of settlement" and that it was unreasonable for Parents to reject its offer. In response, Plaintiff contends that he was justified in rejecting Defendant's offer because it did not include a provision to pay for his attorney's fees and maintained a provision that limited the District's obligations regarding A.V.'s placement which could have potentially precluded him from services, future assessments, and transportation.[7] [Doc. No. 32 at 5-7.]

Under the IDEA, if a parent "protracts the litigation by rejecting a favorable offer, he risks suffering a financial penalty." *T.B ex rel. Brenneise v. San Diego Unified Sch. Dist*, 806 F.3d 451, 476-76 (9th Cir. 2015). This is because IDEA prohibits an award of attorneys' fees and related costs subsequent to the time of a written offer of settlement to a parent if: "(I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins; (II) the offer is not accepted within 10 days; and (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D). "To deny attorneys' fees under this provision, the court must find that the relief obtained from the ALJ was "not more favorable to the parents than the offer of settlement." *T.B. ex rel. Brenneise*, 806 F.3d at 476 (quoting 20 U.S.C. § 1415(i)(3)(D)(i)(III)) (emphasis added in original) ("it should be recognized that the statute specifies that the comparison of the settlement offer versus the result of litigation must be made from the perspective of the parents, not the district's"). An exception to this prohibition allows an award of fees and costs to be "made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." 20 U.S.C § 1415(i)(3)(E).

---

[7] Parents initially rejected the settlement offer because it failed to provide the relief being sought and they considered the terms to be overboard and lacking in specificity. [Doc. No. 21-2 at 123-124.]

Here, the District's statutory settlement offer would have reimbursed Parents for tuition at Banyan subject to proof and documentation of attendance and mileage reimbursement dating back to January of 2015 through to the end of 2014-2015 school year. [Doc No. 21-2 at 119-121; Doc No. 31-1 at ¶ 7.] As part of the offer District would provide occupational therapy services at 30 minutes a week and speech therapy service at 50 minutes per week until the end of 2014-2015 school year while Banyan was in session. [Doc No. 21-2 at 120; Doc No. 31-1 at ¶ 7.] If these related services were provided by Banyan at additional costs, District, subject to proof, would reimburse the monies. [Doc No. 21-2 at 120.] If these services were not provided by Banyan, District would procure and pay for them via a certified non-pubic agency. [*Id.*] District also offered A.V. two prospective placements: (1) he could attend Sierra with District paying the round trip transportation costs or (2) he could attend Newbridge with Parents being entirely responsible for paying the transportation costs even if a later IEP determined A.V. should attend NewBridge. [*Id.*] The statutory settlement offer provided that if Parents selected NewBridge "the only prospective waiver of claims shall relate to parents assuming full responsibility for transportation costs." [*Id.*] It did not include an offer to pay attorneys' fees and costs and specifically stated that each party would bear its own fees and costs.

The ALJ's decision reimbursed Parents $27,030 for A.V.'s tuition at Banyan from January 5, 2015, to June 10, 2015, and awarded $1,604.67 in mileage costs for transporting A.V. to and from Banyan. The ALJ did not require District to place A.V. at NewBridge, finding that Sierra could provide A.V. with a FAPE and did not place any prospective transportation costs on Parents. [Doc. No. 1-1.]

Defendant focuses on what was included in the terms of the settlement itself to illustrate that the ALJ's decision was not more favorable than the statutory settlement offer. But, Defendant fails to consider what was omitted from the Settlement and the ALJ's decision. Under the terms of the proposed settlement Parents would not have been able to seek an award for fees and costs already incurred. Parents' attorney had been representing them for approximately six months, had been racking up billable hours and had revoked

the earlier offer to eliminate attorneys' fees and costs in an attempt to informally settle this matter. Thus, "[b]y declining the offer, the [Antunes] retained the right to seek an award of fees and costs. In that way, the offer was less favorable than the relief obtained." *T.B. ex. rel. Brenneise,* 860 F.3d at 478. Similarly, Defendant's related argument that the ALJ award was not more favorable to Parents because it did not provide them with the choice of two non-public schools overlooks the prospective waiver related to one of the offered schools that was included in the settlement. If Parents agreed to the offer, A.V.'s future attendance at NewBridge would be predicated on his Parents ability to foot the bill for the costs of daily roundtrip transportation. Proposing Parents prospectively agree to pay transportation costs for their child to attend a specific school, even if the school is later offered by District as that child's FAPE, imposes a monetary cost on Parents. The ALJ did not impose any prospective transportation costs on Parents and therefore provides another way, "the offer was less favorable than the relief obtained." *Id.* In light of these omissions, and viewing the offer from Parents perspective, the Court finds the ALJ's decision was not more favorable than the statutory settlement offer.

Defendant also argues that A.V's parents had no reasonable basis for rejecting its offer. The Court disagrees. The fact that the proposed settlement did not include an offer to pay attorneys' fees provided Parents' with sufficient justification for rejecting it. As the Court of Appeals noted, '[t]here is little precedent interpreting the phrase 'substantially justified,' but examples from other cases include situations where the offer failed to cover the parents' attorney fees." *Beauchamp v. Anaheim Union High Sch. Dist.,* 816 F.3d 1216, 1222 (9th Cir. 2016) (citing *Dicks v. D.C.*, 109 F. Supp. 3d 126, 131-32 (D.D.C. 2015)). Cases within this circuit have found that a failure to provide for attorneys' fees can be interpreted as providing sufficient justification for rejecting a settlement offer. *See, e.g., Adams v. Compton Unified Sch. Dist.*, Case No CV 14-04753 BRO (PJWx, 2015 WL 12748005, at *5 (C.D. Cal. July 16, 2015) ("failure to provide for attorney's fees in their statutory settlement offer when Plaintiffs had a reasonable basis to expect to recover fees substantially justified Plaintiffs in rejecting Defendants' [] settlement offer."); *Hawkins v.*

*Berkeley Unified Sch. Dist.*, No. C-07-4206 EMC, 2008 U.S. Dist. LEXIS 94673 (N.D. Cal. Nov. 20, 2008) (finding that the insufficiency of the attorney's fees offered in settlement offer substantially justified the plaintiff's decision to reject the offer). Further, proposing Parents prospectively agree to pay transportation costs for their child to attend a specific school, even if the school is later offered by District as that child's FAPE, imposes a monetary cost on Parents that cuts at the heart of the *free* public education IDEA promotes. The inclusion of this prospective waiver regarding future transportation costs also provides a reasonable justification for rejecting the statutory settlement offer. Accordingly, the Court concludes that Parents were substantially justified in rejecting Defendant's offer because it did not provide any monies towards attorneys' fees and it was restricting A.V.'s rights under the IDEA.

In light of the above, the Court finds that the statutory bar to an award of attorneys' fees and related costs is not applicable.

**B. Inclusion of fees to cover activities that occurred prior to the initiation of the administrative proceedings**

Next, Defendant asserts that Plaintiff improperly seeks substantial fees for work performed by Mr. Schwartz related to the development of his IEP and future school placement.[8] In support of its position, Defendant notes that from August 21, 2014 through May 27, 2014, Mr. Schwartz was the sole attorney proving A.V. legal services, before the case transitioned to attorney Erin Minelli who directly handled the due process hearing. It is Defendant's position that once Ms. Minelli became involved, Mr. Schwartz's role was to "continue and complete discussions with the District's counsel and his clients to come to an agreement on the IEP." [Doc. No. 31 at 10:7-9.] In response, Plaintiff asserts that

---

[8] Defendant also asserts that some of the hours Mr. Schwartz has included are related to the IEP process and A.V.'s placement and are therefore not compensable. Further, Defendant argues that fees listed for continued communications between Mr. Schwartz and the District regarding A.V.'s placement, in which Ms. Minelli did not participate, were not related to the due process hearing and therefore are also not compensable.

10

Mr. Schwartz bill does not include any time for preparation and attendance at the IEP meetings. Defendant posits that since Plaintiff's due process action was not initiated until April 23, 2015, any requests for time that predate the commencement of the action should be excluded. Specifically, Defendant takes issue with Plaintiff's inclusion of billable hours from August 21, 2014 through to April 23, 2015, other than for the preparation of the complaint. Plaintiff counters that "time spent on the litigation even if occurs before an initiating document is filed, are compensable." [Doc. No. 32 at 3:8-9.]

Fees related to time spent on the litigation, prior to the commencement of a formal suit are compensable. As the Supreme Court has explained "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.' Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case." *Webb v. Bd. Of Educ. Cnty., Tenn.*, 471 U.S. 234, 243 (1985). But, the IDEA explicitly provides that courts may not award fees for an attorney's attendance at an IEP meeting. 20 U.S.C. § 1415(i)(3)(D)(ii). Courts within the Ninth Circuit have found that attendance at IEP meetings or resolution sessions[9] and the work done in relation to them is not compensable. *See LaToya A. V. S.F. Unified Sch. Dist.*, No. 3:15-CV-04311-LB, 2016 WL 344558, at *10 (N.D. Cal. Jan. 28, 2016) ("The court excludes all fees relating to the . . . resolution session."); *Hiram C. v. Manteca Unified Sch. Dist.*, No. S-03-4568 WBS KJM, 2004 WL 4999156, at *2 (E.D. Cal. Nov. 5, 2004) (denying request for compensation at IEP meetings because "20 U.S.C. § 1415(i)(3)(d)(ii) prohibits any award of attorney's fees 'relating to any meeting of the IEP Team, unless such meeting is convened as a result of an administrative proceeding or judicial action…").

---

[9] A "resolution session" is a meeting between parents and relevant IEP team members that the IDEA mandates within fifteen (15) days of the District receiving notice of a new due process filing, to discuss the student's program without assistance or determination by a neutral. 20 U.S.C. § 1415(f)(1)(B)(i).

11

The Court has reviewed the billable entries that Defendant assert are related to the IEP. [Doc. No. 31-2 at 2.] The majority of the challenged entries were for time spent in April 2016, following the filing of the complaint for partial reversal of the OAH decision. The Court finds nothing that substantiates Defendant's position and is mindful of the fact that, based on the record before it, the last IEP meeting between the parties occurred in May 2015. Being unable to say with any degree of certainty that these entries related to the IEP or resolution sessions, the Court declines to discount them from the time billed.

However, the Court agrees with Defendant that the request includes time spent by Mr. Schwartz that cannot be interpreted as being related "to this litigation." Plaintiff has submitted a blanket request for fees, dating back months before commencement of the due process hearing, without providing any explanation as to how they are related to work "on this litigation." The Court finds it difficult to conceive how work performed between August 21, 2014 and March 2015 can be considered "work on a litigation" that was not even commenced until April 23, 2015, and nothing in the entries, most of which are labeled as correspondence/communication with client/or district, suggest that the work related to the drafting of the initial pleadings or development of the theory of the case. Plaintiff's cursory response that "Counsel spent several months preparing for due process, then in January 2015, at the request of Defendant, began settlement negotiations outside of the IEP process" [Doc. No. 32 at 3:10-14] does not assuage the Court's concern. Additionally, the fees being requested by the Plaintiff are for work performed by Mr. Schwartz, who Defendant asserts and Plaintiff does not contest, was not the attorney primarily responsible for litigating the due process case. In light of the lack of substantiation regarding the relatedness of this work, the Court concludes that the work billed for the month preceding the filing of the complaint was work reasonably performed on this litigation.

Moreover, the Court finds Plaintiff has overlooked the important caveat of the *Webb* ruling, that the compensability of pre-formal commencement fees is limited to "*some of the services performed before the lawsuit is formally commenced.*" *Webb,* 471 U.S. at 243. The Supreme Court did not hold that *all* fees are reimbursable. Accordingly, the Court

declines to reimburse Plaintiff for work done from August 21, 2014 through March 22, 2015 and reduces the fee request by $6,047.50.[10]

**C. Reduction of fees to reflect degree of success**

Defendant also argues that Plaintiff's recovery should be reduced by 50 percent to appropriately reflect his partial success at the OAH. Taking the opposite position, Plaintiff asserts that substantial relief awarded at the OAH is illustrative of the excellent results achieved and therefore warrants granting the full fee amount. [Doc. No. 30-2 at 5-9; Doc. No. 32 at 8-9.]

In determining the amount of fees to award, district courts must consider the results obtained. *Hensley*, 461 U.S. at 434. In situations, such as here, where a plaintiff has been deemed a prevailing party, even though he had only succeeded on some of his claims for relief, the court must ask two questions:

> [first] did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory bases for making a fee award?

*Hensley*, 461 U.S. at 434. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. In such circumstances reduction of the fee award is not required simply because plaintiff has not prevailed on every issue. *Id.* "If on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. Where only partial or limited success has been achieved the absence of precise formula or rule for determining the appropriate reduction is based on degree of success obtained. *Id. See also Aguirre*, 461 F.3d at 1118, 1121 (Although "[t]here is no precise rule or formula for making [fee] determinations," "the most critical factor is the degree of success obtained.") (quoting *Hensley,* 461 U.S. at 424,

---

[10] In determining this amount the Court has tallied up the billed amount found at pages 4– 10 in Doc. No. 30-3 for time entries between 08/21/14 through 03/16/2015.

436). Using its discretion a district court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.*

Turning to the first question, the Court finds that plaintiff did not fail to prevail on claims that were unrelated to the claims on which he succeeded. Here, Plaintiff's claims for relief involved a common core of facts and were based on related legal theories. All of his claims stemmed from Defendant's obligation to provide Plaintiff with a FAPE under IDEA and whether Defendant followed the statutory requirements for developing his IEP. Finding much of counsel's time to be "devoted generally to the litigation as a whole," the Court "focus[es] on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonable expended on the litigation." *Id.* at 435.

In determining the level of Plaintiff's success the Court will considers the claims pursued and outcome of the due process hearing. There were eight identified issues before the ALJ, Plaintiff originally argued that Defendant failed to provide A.V. with a FAPE based on six issues, excluding subparts. Defendant, in turn, presented two issues for the ALJ to determine, with the parties stipulating that Sierra would meet student's placement needs. Defendant prevailed on a majority of the issues, with the ALJ concluding that: (1) Defendant did not predetermine its offer of placement at Sierra; (2) Defendant was not required to make the offer of placement at Sierra at the IEP team meeting; (3) Defendant did not violated FAPE by failing to have a representative from Sierra present at an IEP meeting and; (4) that Parents had meaningfully participated in the meeting. But, the ALJ found that Plaintiff prevailed on two distinct issues and portions of two other issues,[11]

---

[11] The ALJ found that Plaintiff prevailed on Issues 2 (a) and 8 and on portions of Issues 1 and 7. Issue 2 (a) related to the issue of whether District denied A.V. a FAPE with regard to the January 23, 2015 IEP team meeting but failing to offer a specific non-public school placement. Issue 8 asked if the settlement agreement between the parties, executed on February 28, 2014, and March 3, 2014, limit or otherwise preclude any remedy to which A.V. might otherwise be entitled for prevailing on any issues brought in this case. The question posed in Issue 1 was did District deny A.V. a FAPE by failing to make an appropriate, specific offer of placement on or after December 2014? Issue 7 asked if District offered A.V. a FAPE in the least restrictive environment in the triennial IEP dated December 15, 2014, as amended in January 23, 2015, and May 20, 2015.

determining that Plaintiff was denied a FAPE between December 2014 and April 2015. To remedy the denial of a FAPE, the ALJ required Defendant to reimburse Parents for expenses associated at Banyan through the end of the 2015 school year, including tuition and transportation costs. While most of the issues Plaintiff did not prevail on were regarding purported procedural violations, he also failed to secure the additional vision and occupational therapies and speech and language services he had requested. At best, Plaintiff only secured approximately one-third of the remedies sought and prevailed on half of the issues he presented.[12] [Doc. No. 31-2 at 9-15.]

In light of the ALJ's findings and remedies awarded it "cannot be said that Plaintiff obtained 'excellent results' that would entitle h[im] to a full attorneys' fee award." *L.R. v. Hollister Sch. Dist.*, Case No.: 5:13-MC-80085-EJD, 2014 WL 1118019, at * 6 (N.D. Cal. Mar. 19, 2014). As a consequence, the Court finds that a reduction in attorneys' fees is appropriate but that there is no clear determination point of what that amount should be. Having familiarized itself with the issues at the summary judgment stage, and in consideration of Plaintiff's degree of success and the relief afforded him at the due process hearing, the Court applies its discretion and finds a 33 percent reduction in the requested attorneys' fees award to be reasonable and appropriate. *Hensley*, 461 U.S. at 437.

### D. Inclusion of Appellate Costs

Defendant's penultimate argument is that Plaintiff may not recover attorneys' fees for his district court appeal since he was not the prevailing party on the appeal. Not surprisingly, Plaintiff takes the opposite position, asserting that he was the prevailing party at both the Administrative Hearing and the District Court appeal and is therefore entitled to an award of attorneys' fees for both. [Doc. No. 30-2 at 5; Doc. No. 32 at 9.]

---

[12] In determining how many issues Plaintiff prevailed on in this case is not as simple as reviewing the issues he presented in his amended complaint. After consolidation of Plaintiff and Defendant's cases, the parties clarified what the issues were in a joint exhibit, with the ALJ noting that Plaintiff's withdraw of two of his earlier issues. This issues in the joint exhibit was later re-numbered and re-worded by the ALJ for the sake of uniformity and clarity.

A prevailing party for the purposes of awarding attorney's fees is a party who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Parents of Student W.*, 31 F.3d at 1498. Plaintiff is indeed correct that this Court previously determined that he "was the prevailing party at the ALJ hearing." [Doc. No. 29 at 32.] The Court also agrees with Plaintiff that, to the extent that he successfully defended against Defendant's summary judgment motion and maintained the ALJ's previous reimbursement award, he prevailed on the appeal. The Court has reviewed the submitted invoice and has confirmed that Plaintiff is not submitting any requests for fees associated with his unsuccessful summary judgment motion. While the time spent on these activities appear as line items, the rate and total billed for this time is $0.00. [Doc. No. 30-3 at 34.] Accordingly, the Court declines to remove time spent responding to Defendant's summary judgment motion from the fee award.

### E. Additional Reductions Requested

Finally, Defendant's seek to remove the time spent by attorney Matthew Storey at the due process hearing and the travel charges for Ms. Minelli to attend the hearing from the attorneys' fee award. Plaintiff counter that reimbursement for travel expenses is not unreasonable and that the attorneys' fees have already been reduced to avoid duplicative billing.

"The touchstone in determining whether hours [spent on travel time] have been properly claimed is reasonableness." *Suzuki v. Yuen,* 678 F.2d 761, 764 (9th Cir. 1982). "Plaintiff bears the burden of establishing that the travel time that he billed for is compensable in the local community." *K.M. ex. rel. Bright v. Tustin Unified Sch. Dist.*, 78 F. Supp. 3d 1289, 1304 (C.D. Cal. June 1, 2015) (citation omitted). Here, Plaintiff has not introduced any evidence establishing that local attorneys customarily bill their clients for travel time to due process hearings. Rather, Plaintiff simply cites to a district court case in the Eastern District. Having not met his burden, the Court reduces Plaintiff's attorneys' fee award by $914.50 to reflect the time Ms. Minelli spent travelling to and from the due process hearing. [Doc. No. 30-3 at 24-25.]

As to Mr. Storey's presence at the due process hearing, the Court finds nothing untoward in his presence at the due process hearing. Furthermore, Defendant has not provided the Court with any authority that holds that a second attorney's presence at a due process hearing is not compensable. Accordingly, the Court declines to deduct the 32.2 hours spent by Mr. Storey at the OAH from the requested fees.

### IV. CONCLUSION

After making the reductions described above, the total amount of attorneys' fees to which Plaintiff's counsel are entitled is 66 percent of $115,515.37.[13] Accordingly, the Court awards Plaintiff's counsel $77,010.28 in attorneys' fees.

The Clerk shall close this case.

Dated: July 11, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[13] $122,477.37 - $6,047.50 (for worked not "on this litigation) – $914.50 (travel time) = $115,515.37 – $38,505.09 (33%) = $77,010.08.

17

3:16-cv-0803-CAB-(BLM)